IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOSEA WORD, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF CHICAGO, EDDIE JOHNSON, EUGENE WILLIAMS, and AL WYSINGER, <br><br> Defendants. | No. <br><br> Jury Trial Demanded |

## **COMPLAINT**

Plaintiff HOSEA WORD complains against Defendants THE CITY OF CHICAGO, EDDIE JOHNSON, EUGENE WILLAIMS, and AL WYSINGER, and alleges as follows:

1.  This is an action brought under 42 U.S.C. § 1983 and Illinois law because Defendants shared the answers for the lieutenant's examination with certain female officers that they were dating or had married.

2.  The Defendants shared the answers to manipulate the examination process and to ensure that their wives and girlfriends would score well on the lieutenant's exam.

3.  By rigging the test, Defendants enabled persons to be promoted who had not fairly and honestly earned that right.

4. The promotion of unqualified or underqualified persons to higher ranks within the Chicago Police Department ("CPD") leads to violations of citizens' civil rights and to problems detailed in the Justice Department report.

5. Key among the Justice Department's findings was the "[i]nadequate training and supervision" of CPD officers.

6. When unqualified or underqualified persons are promoted to higher ranks within the CPD, those persons are more likely to authorize or condone the use of excessive force against civilians and are not as knowledgeable or capable of employing or instructing others on de-escalation.[1]

7. Examinations are administered to join the CPD and to be promoted within the Department.

8. The higher an applicant scores on the test, the more likely they are to be hired or promoted.

9. Top scorers are almost always hired or promoted.

10. The examinations are supposed to be fair and are administered by a third-party to create the appearance of fairness.

11. The willingness of leaders of the CPD to manipulate the promotion exam to ensure favored candidates are promoted demonstrates to rank-and-file members that honesty and integrity are not valued characteristics of a Chicago police officer.

---

[1] U.S. DEP'T OF JUSTICE CIVIL RIGHTS DIVISION AND U.S. ATTORNEY'S OFFICE NORTHERN DISTRICT OF ILLINOIS, INVESTIGATION OF THE CHICAGO POLICE DEPARTMENT (2017), https://www.justice.gov/opa/file/925846/download; U.S. DEP'T OF JUSTICE CIVIL RIGHTS DIVISION AND U.S. ATTORNEY'S OFFICE NORTHERN DISTRICT OF ILLINOIS, FACT SHEET: THE DEPARTMENT OF JUSTICE PATTERN OR PRACTICE INVESTIGATION OF THE CHICAGO POLICE DEPARTMENT (2017), https://www.justice.gov/opa/file/925851/download.

12. As a result, rank-and-file officers are less prone to treat the public fairly and to act with integrity when Department leaders fail to exhibit those same traits towards their subordinates and colleagues.

13. Here, Plaintiff applied to take the Lieutenant examination, paid a fee, and believed the test would be fair and impartial, based on a representation that the examination was developed and administered by an independent third-party on Illinois law and City rules.

14. Defendants gained access to the test in advance and manipulated the testing process to ensure that their wives and girlfriends would be the top scoring applicants.

15. Defendants had supervisory and final policymaking authority within the CPD.

16. The acts of the Defendants are not isolated; rather, they constitute a pattern and practice so permanent and well-settled as to constitute an actionable "custom or usage."

17. The City of Chicago was aware of prior instances of cheating and manipulation of the testing process.

18. Yet, the City of Chicago did not provide procedural safeguards to ensure the test was fair and impartial to prevent the dissemination of the answers, and the City of Chicago provided no opportunity to contest these flaws with the test.

19.     The Defendants' acts and omissions violated Plaintiff's right to equal protection in a fair and impartial test and breached the contract Plaintiff and the City of Chicago entered into for a fair and impartial exam.

## Jurisdiction and Venue

20.     Jurisdiction is proper pursuant to 28 U.S.C. § 1343(a)(3) & (4), which confers original jurisdiction in a civil action to redress the deprivation of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States under color of any State law, statute, ordinance, regulation, custom, or usage, and to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

21.     Jurisdiction is also proper pursuant to 28 U.S.C. § 1331, which confers original jurisdiction in a civil action arising under the Constitution or laws of the United States, and under 28 U.S.C. § 1367, which confers supplemental jurisdiction over the state law claims.

22.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because the Defendants reside within this District, and because the events or omissions giving rise to the claims alleged herein occurred and continue to occur within this District.

## Parties

23.     The plaintiff is a current employee of the City of Chicago.

24.     Hosea Word is a Sergeant in the Chicago Police Department.

25. Hosea Word has been a Chicago police officer since 1993 and a Sergeant since 2001.

26. The City of Chicago is a municipal corporation organized under the laws of the State of Illinois.

27. The Chicago Police Department is a component of the City government.

28. The Police Department operates under the direction of a Superintendent who is appointed by the Mayor and approved by the City Council.

29. The Superintendent serves at the pleasure and direction of the Mayor, and sets policy and directs the culture of the CPD in consultation with the Mayor and other policymakers within the City government.

30. Defendant Eddie Johnson is the Superintendent of the CPD.

31. The Superintendent is assisted by the First Deputy Superintendent, Chiefs and several Deputy Chiefs.

32. The selection of First Deputy Superintendent and Deputy Chiefs are greatly influenced by the Mayor.

33. The Deputy Superintendent and Deputy Chiefs possess and exercise policymaking authority.

34. The CPD is divided into Bureaus and Divisions.

35. The Deputy Superintendent and Deputy Chiefs oversee the Bureaus, and the Divisions that comprise that Bureau.

36. Eugene Williams was the Chief for the Bureau of Organizational Development.

37. Alphonso Wysinger was the First Deputy Superintendent.

38. The Superintendent along with the First Deputy Superintendent, Chiefs, and Deputy Chiefs have the authority to promote, transfer, and discipline officers within the CPD.

39. The policies and practices of the CPD described herein were directed, approved, supervised, and implemented by the Superintendent, First Deputy Superintendent, Deputy Chiefs, and other CPD policymakers (the "Individual Defendants").

40. The Individual Defendants are or were at relevant times employees of the City of Chicago and acted and act under color of law.

41. The Individual Defendants' actions were within the scope of their employment and within the scope of their authority as managers and policymakers overseeing the operations of the CPD.

42. Each act or omission alleged herein was done under color of authority and color of law vested in the City of Chicago as a municipal corporation within the State of Illinois.

## Facts

43. The City of Chicago has an Ethics Ordinance that applies to all City workers, including the Individual Defendants.

44. The Ethics Ordinance prohibits the use of any nonpublic information obtained through the performance of one's duties for private gain, prohibits the use of a position to influence action for financial gain, and prohibits advocacy for employment of any City employee's relative or spouse.

45. The primary function of the Police Department is protection of the persons and property within the City of Chicago.

46. The CPD employs approximately 12,000 full-time officers.

47. The CPD itself is governed by Rules and Regulations adopted by the Police Board and is applicable to the Individual Defendants.

48. The Rules and Regulations require members of the CPD to maintain the highest standards of integrity and ethics.

49. Rule 4 prohibits conduct or actions taken to use an official position for personal gain or influence.

50. The City of Chicago created a "hiring plan" for the CPD.

51. The hiring plan was intended to ensure that the selection of personnel for employment and promotions within the CPD is based on the knowledge, skills, and ability to perform the job.

52. The selection and promotion of police officers based on knowledge, skills, and ability to perform the job is confirmed by Illinois statute providing that promotions within police departments shall be done on the "basis of ascertained merit" and that all "examinations for promotion shall be competitive."

53. The hiring plan and CPD rules provide for the use of an outside vendor to administer examinations used in conjunction with hiring and promotion.

54. While the promotion examination is created by a third-party vendor, the third-party vendor relies on "subject matter experts" to create the test.

55. The subject matter experts include members of the CPD.

56. The subject-matter experts have access to the testing material before the test is administered.

57. An officer seeking a promotion submits an application and pays a fee to take the examination.

58. Those officers that take an examination are then ranked on a list in order of their performance.

59. Promotions from the ranking list are generally done in order of the highest ranking first.

60. The promotion of officers within the CPD affects the general public.

61. The promotion of competent and knowledgeable officers ensures that proper police procedures are followed and the civil rights of the citizens of Chicago are respected.

62. Unfortunately, officers within the CPD are often promoted based primarily on personal relationships and not based on competence or knowledge.

63. The failure to promote competent and qualified officers leads to, among other things, fatal errors in police procedures and judgment.

64. The systemic problems within the CPD as identified by the United States Department of Justice can be traced to the wrongful promotion of officers.

65. CPD's leadership is overwhelmingly male and those men are known to date or marry female CPD officers.

66. Defendant Johnson's wife/girlfriend was a CPD Sergeant.

67. Defendant Williams' girlfriend was a CPD Sergeant.

68. Defendant Wysinger's wife was a CPD Sergeant.

69. The Individual Defendants sought to advance the careers of their wives and girlfriends within the CPD.

70. The wives and girlfriends of the Individual Defendants did not score in the top tier on the lieutenant's examination administered in 2006.

71. For example, Defendant Wysinger's wife was ranked 280 out of 700.

72. Upon information and belief, the Individual Defendants asked then Superintendent Gary McCarthy to promote their wives and girlfriends to the rank of Lieutenant.

73. Upon information and belief, then Superintendent Gary McCarthy stated that it was a conflict of interest for the Individual Defendants to request the promotion of their wives and girlfriend so McCarthy refused to grant the promotions.

74. The Individual Defendants decided to assist their wives and girlfriends in taking the examination, so that the wives and girlfriends would score well and be promoted.

75. A new lieutenant's examination was administered in 2015.

76. Defendant Williams was a "senior subject matter expert" for the lieutenant's examination and had access to the test before it was administered.

77. The wives and girlfriends of the Individual Defendants formed a study group for the lieutenant's examination.

78. Defendant Williams provided access to the examination materials to the study group with the assent and knowledge of the other Individual Defendants.

79. With access to the test materials in advance, the wives and girlfriends were able to dramatically improve their performance on the lieutenant's exam.

80. For example, Defendant Wysinger's wife was ranked first on the 2015 examination, improving from a rank of 280 on the 2006 examination.

81. Such dramatic improvement on the exam was statistically improbable without advance access to the testing materials.

**Hosea Word**

82. Word took the Sergeant's examination in or about 1996 and scored well.

83. Word was promoted to sergeant in 2001.

84. Word took a lieutenant's examination in or about 2006.

85. Word again scored well and was ranked 150 on the list.

86. Officers ranking 1-149 were promoted.

87. Word was next in line to be promoted.

88. The Individual Defendants, however, decided to administer a new examination in 2015.

89. Word was initially unaware of the motivations for administering the new examination and was unaware of the study group's access to the answers.

90. Word took the test and was ranked 280 out of 700.

91. In 2016, the Individual Defendants began using the results from the new examination.

92. The wives and girlfriends of the Individual Defendants were promoted from the new list, and were subsequently sworn in as lieutenants.

93. Word learned that the lieutenant's examination had been manipulated by the Individual Defendants to assist their wives and girlfriends.

## Count I

### Equal Protection & Due Process
### 42 U.S.C. § 1983

94. Paragraphs 1 through 93 are incorporated by reference.

95. The Fourteenth Amendment to the United States Constitution protects persons from being subjected violations of equal protection and due process by persons acting under color of state law.

96. Defendants were under a duty to follow the rules, statutes, and plans for the conduct of examinations for the promotion of police officers.

97. Defendants had a duty to behave ethically in the conduct of examinations for the promotion of police officers.

98. Plaintiff had a protectable interest and reasonable expectation that Individual Defendants would comply with the statues, rules, plans, and ethics in the conduct of the lieutenant's examination.

99. Plaintiff had a protectable interest in a fair and impartial examination to determine merit for a promotion.

100. The Individual Defendants, under color of state law, engaged in a pattern and in practice of manipulating the promotion examination.

101. The Individual Defendants exercised final policymaking authority for the CPD.

102. The acts described herein were and are part of a pattern and practice that includes rigging hiring and promotion examinations.

103. The City of Chicago was aware of the pattern and practice of manipulation of the examination process, but chose not to remediate that practice.

104. Defendants further failed to provide Plaintiff with opportunity for a hearing and other procedural safeguards to contest the lack of integrity in the promotion examination.

105. Defendants deprived Plaintiff of equal protection of the laws of the United States of American and of due process.

**WHEREFORE**, Plaintiff prays that the Court: enter preliminary and permanent injunctive relief, including: (1) ordering removal of the promotion list tainted by the fraudulent testing; (2) appointing an independent and impartial Special Master or third-party to oversee the testing process at the CPD; (3)

prohibiting the Defendants from retaliating against the Plaintiff; (4) awarding the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and (5) awarding all relief to which Plaintiff may be entitled, even if he has not demanded that relief in the pleadings.

## Count II

### Breach of Contract

106. Paragraphs 1 through 93 are incorporated by reference.

107. The City of Chicago made an offer to Plaintiff to apply for the Police Lieutenant examination.

108. The City of Chicago represented that the test was developed and administered by an independent vendor, and that the test and testing process would comply with the statues, rules, plans, and procedures governing the ethical and impartial examination based on merit.

109. Plaintiff performed his obligations under the contract by accepting the offer, completed the application, and paid the City of Chicago a fee.

110. The City of Chicago breached the contract by conducting a tainted examination that violated the statues, rules, plans, and procedures governing examinations for promotions of police officers.

111. Alternatively, Plaintiff is an intended third-party beneficiary of the contract between the City of Chicago and the independent vendor.

112. That contract, upon information and belief, prohibits the sharing the test or answers, prior to its administration, with any applicants.

113. The prohibition on sharing the test or answers with applicants is intended to ensure the integrity of the test and prevent cheating.

114. This prohibition directly benefitted the Plaintiff as an applicant for the examination.

115. The prohibition on sharing the test or answers with applicants was breached.

116. Plaintiff suffered damages as a result of these breaches. Plaintiff paid a fee and expended time and effort studying for a rigged test.

**WHEREFORE**, Plaintiff prays that the Court: enter preliminary and permanent injunctive relief, including: (1) ordering removal of the promotion list tainted by the fraudulent testing; (2) appointing an independent and impartial Special Master or third-party to oversee the testing process at the CPD; (3) prohibiting the Defendants from retaliating against the Plaintiff; (4) awarding the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees; and (5) awarding all relief to which Plaintiff may be entitled, even if he has not demanded that relief in the pleadings.

## Count III

### (against City of Chicago)

### Indemnification - 745 ILCS 10/2-302

117. Paragraphs 1 through 93 are incorporated by reference.

118. This action was instituted and asserts claims against current and former employees of a local public entity based on injuries allegedly arising out of

acts or omissions occurring within the scope of employment of the Individual Defendants.

119. Pursuant to Illinois law, the City of Chicago shall indemnify the employee or former employee for any judgment based on the claims asserted in this action, or for a compromise or settlement of the claims asserted in this action.

**WHEREFORE**, Plaintiff prays that, pursuant to 745 ILCS 10/2-302, the City of Chicago indemnify and pay any judgment or settlement rendered against any of the Individual Defendants.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action.

**DATED: January 8, 2018.**

**PLAINTIFF HOSEA WORD,**

By: Victor P. Henderson
One of their Attorneys

Victor P. Henderson
**HENDERSON PARKS, LLC**
140 South Dearborn Street
Suite 1020
Chicago, Illinois 60603
Tel.: (312) 262-2900
vphenderson@henderson-parks.com