IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOSEA WORD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-141 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| CITY OF CHICAGO, EDDIE JOHNSON, EUGENE WILLIAMS, and AL WYSINGER, | ) ) ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants City of Chicago ("the City"), Eddie Johnson, Eugene Williams, and Alfonza Wysinger (collectively, "Defendants") move this Court to dismiss Plaintiff's Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6), and state as follows:

## INTRODUCTION AND PROCEDURAL HISTORY

In 2015, the City held a promotional exam for the job of Lieutenant in the Chicago Police Department ("CPD"). Disappointed in his ranking, and suspicious of the high scores and ranking of three (unidentified) female candidates, Plaintiff Hosea Word ("Plaintiff") concluded the three women must have been given test answers by high-level male CPD employees whom he believes were either married to or dating the three women, because they could not have otherwise been able to achieve their test scores meritoriously. If Plaintiff has any evidentiary basis for this conclusion, he certainly does not include it in his Complaint. Plaintiff does not allege the exam itself was biased, only that three unidentified women were given answers to the exam. Based on nothing more than conjecture, Plaintiff sues the City and three high-ranking CPD officials, who he alleges were the husbands or boyfriends of the women, alleging his constitutional rights were violated, and a contract was broken.

Plaintiff's § 1983 and breach of contract claims fail on all fronts, for a multitude of reasons:

- He has failed to allege a protected liberty or property interest, for due process purposes, or that he was denied process to protect any such rights.

- He has not pointed to a protected class for Equal Protection purposes, and "class of one" claims are barred in public employment.

- The 2-year Statute of Limitations for claims under § 1983 bars all constitutional claims.

- He has not alleged the Individual Defendants personally acted to deprive him of his rights, as required for § 1983 claims, and qualified immunity protects them.

- He has not pled acts by a "policymaker" or a custom or policy to sustain a *Monell* claim.

- He has not alleged any contract involving the Individual Defendants.

- He also has not pled a specific contract with the City to take the exam based on the Exam Announcement, let alone one with the assurances he claims.

- He has not pled anything to suggest he was an intended, as opposed to incidental, beneficiary of any contract between the City and its unidentified vendor.

For any or all of the above reasons, Plaintiff's claim should be dismissed.

## FACTUAL ALLEGATIONS

Plaintiff alleges he has been employed by the City as a Sergeant in the Chicago Police Department ("CPD") since 2001, and before that was a Police Officer since 1993. *Compl.* ¶¶ 23-25. He alleges Defendant Eddie Johnson ("Johnson") is now the Superintendent of Police, while Defendant Eugene Williams ("Williams") was formerly Chief of the Bureau of Organizational Development, and Alfonza (misspelled as Alphonso) Wysinger ("Wysinger") was formerly First Deputy Superintendent. *Compl.* ¶¶30; 36-37. He alleges that Johnson's girlfriend or wife, and Wysinger's wife, were CPD Sergeants. *Compl.* ¶¶66-68. He also claims Williams (who is married) had an unidentified girlfriend who was a CPD Sergeant. *Compl.* ¶67.

Plaintiff claims the Individual Defendants previously sought to advance the careers of their wives or alleged girlfriends, but then-Superintendent McCarthy would not promote them. *Compl.* ¶¶

2

69-73. He also alleges the women "did not score in the top tier" in the prior Lieutenant's exam, so they were not high enough on the prior eligibility list ("the 2007 Eligibility List") for promotion. *Id.* Plaintiff concludes the Individual Defendants sought to assist the women in taking the exam. *Compl.* ¶74.

A new examination for the position of CPD Lieutenant was administered in 2015 ("the 2015 Lt.'s Exam"). *Compl.* ¶75. Plaintiff alleges the three women formed a study group for the 2015 Lt.'s Exam. *Compl.* ¶77. Based on their performance on the 2015 Lt.'s Exam, each of the three women were promoted to Lieutenant from the new eligibility list. *Compl.* ¶92. In contrast, Plaintiff did not do well on the 2015 Lt.'s Exam. Plaintiff had been 150th on the 2007 Eligibility list, and says he was next in line for promotion when the 2007 Eligibility List was retired. *Compl.* ¶¶84-87. However, he alleges he ranked 280th on the 2015 Lt.'s Exam. *Compl.* ¶90.

Plaintiff claims the strong performance of the three women must be because they were given access to the test questions. Plaintiff says Williams was a senior subject matter expert for the exam, and had access to the 2015 Lt.'s Exam before it was administered. *Compl.* ¶76. He therefore believes Williams provided access to the 2015 Lt.'s Exam materials to the women, with the other Individual Defendants' knowledge. *Compl.* ¶78. Plaintiff alleges the women scored so well on the 2015 Lt.'s Exam because they had access to the answers. *Compl.* ¶79-80. Plaintiff says that at some point, he learned that the 2015 Lt.'s Exam had been manipulated to assist the three women. *Compl.* ¶93. He does not explain what basis – if any – he has for this assertion.

## **LEGAL STANDARD**

The Complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint satisfies this standard when it offers sufficient factual content to allow the court to infer that the defendant is

liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Mere legal conclusions are insufficient. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO ALLEGE A DUE PROCESS CLAIM

"[T]he Due Process clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). "To have a property interest, a person… must have more than a unilateral expectation of it. He must, instead, have a legitimate *claim of entitlement* to it." *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972). Plaintiff has not identified a protected interest, or a deprivation thereof.

#### a. There is no protected interest in the Lieutenant's exam

Plaintiff does not have a protected interest in the administration of the Lt's Exam, or the prospect of promotion. "[A]n employee has no property interest in a *prospective* promotion, even when placed on an eligibility or ranking list." *Moore v. Muncie Police and Fire Merit Com'n,* 312 F.3d 322, 327 (7th Cir. 2002) (emph. in original).[1] This has regularly been applied to Chicago exams. *See, e.g., United States v. City of Chicago,* 869 F.2d 1033, 1037 (7th Cir. 1989) (Chicago police officer had no right to particular position on list); *Bigby v. City of Chicago,* 766 F.2d 1053 (7th Cir. 1985) (no entitlement to challenge Lt's exam); *Wilson v. City of Chicago,* 12-c-06391, 2013 WL 4401364 at *1 (N.D. Ill. Aug. 15, 2013) (no property interest if CPD supervisors encouraged police officers to cheat on Sgt's Exam).

In fact, one of the controlling cases on this issue involves the CPD Lieutenant's exam. In *Bigby v. City of Chicago,* 766 F.2d 1053 (7th Cir. 1985), the Seventh Circuit found applicants taking the Lt's Exam had no protected interest in its fairness, because "these sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant." 766 F.2d at 1056.

---

[1] Also, this is not a case where Plaintiff claims the City skipped over him to promote others on an Eligibility List. Rather, he only alleges several people were given unfair advantage on the 2015 Lt's Exam.

> "It is true that state law requires promotions of government employees, including policemen, to be 'on the basis of ascertained merit and seniority in service and examination.' Ill. Rev. Stat. 1981, ch. 24, ¶ 10-1-13; see Chicago Municipal Code ¶¶25.1-3, 25.1-5 (1977)… The statute and ordinance create an expectation that the examinations used for promotions in the civil service will be fair but, as the Illinois courts have held, not so firm and definite an expectation to be 'property' in a constitutional sense."

*Id* at 1056-57 (internal cites omitted). *Bigby* also found no liberty interest in the CPD Lt's Exam. *Id.* at 1057. Here, Plaintiff quotes the very statute *Bigby* found does *not* create an interest. He avers promotion shall be done on the 'basis of ascertained merit' and that all 'examinations for promotion shall be competitive.'" *Compl.* ¶52. This is 65 ILCS 5/10-1-13, discussed in *Bigby*.[2]

### b. Neither the City's Ethics Ordinance, CPD Rules and Regulations, nor the Hiring Plan create a protected right or interest under Section 1983

Plaintiff also alleges a protectable interest in the "rules, plans, and ethics in the conduct of the Lt.'s exam." *Compl.* ¶98. First of all, the Ethics Ordinance and cited CPD rules merely prohibit abuse of one's City position broadly. They do not address the Lt's Exam or promotion, and cannot create a protected right or property interest in the exam.

Furthermore, the Ethics Ordinance states it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the city, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Mun. Code Chi. § 2-156-005(c). The Ethics Ordinance cannot be the basis of a Section 1983 claim.

Nor can internal CPD Rules create a protected right. *Compl.* ¶¶47-49. "A local government's failure to follow its own procedural rules… does not violate due process." *Kvapil v. Chippewa Cty., Wis.*, 752 F.3d 708, 715 (7th Cir. 2014) (no due process right to fired employee in county rules).

Finally, Plaintiff's misplaced reliance on the Hiring Plan is equally unavailing because the Hiring Plan does not create a due process right. *Compl.* ¶¶50-51; *Hiring Plan,* Exhibit 1.[3] It is a

---

[2] The "Illinois Revised Statutes" were recodified into the "Illinois Compiled Statutes." 25 ILCS 135/5.04.
[3] This Court may take judicial notice of the *City of Chicago Police Department Hiring Plan for Sworn Titles* ("the Hiring Plan"), Exhibit 1, which is filed with the N.D. Ill. in *Shakman v. Cook Cty. Dem. Org.,* 69-cv-2145, *Dkt.*

5

consent decree, which does not create a constitutional right. *Larkin v. Sheahan,* 92-C-5308, 1992 WL 209994 at *5 (N.D. Ill. Aug. 26 1992) (settlement agreement re: hiring did not create due process right).[4] Nor does the Hiring Plan give an applicant a "legitimate claim of entitlement" to the job. A similar attempt to claim a due process interest in the unsworn Hiring Plan was rejected in *Lanton v. City of Chicago,* 16-c-2351, 2018 WL 835340 (N.D. Ill. Feb. 13, 2018). In *Lanton*, the court concluded:

> Looking to the Hiring Plan as a whole, construing it broadly, and based on the unequivocal language granting the Hiring Authority with 'maximum lawful discretion,' the Hiring Authority has discretion whether to choose from the pre-qualified candidate list – or not – and thus [plaintiff] does not have a protected interest in the promotion to [the job].

*Lanton,* 2018 WL 835340 at *9. Plaintiff has no protected interest supporting his due process claim.

Plaintiff also cannot complain about the decision to retire the old list. Someone is always going to be "next" on any eligibility list when it is retired. But simply being on a list does not guarantee promotion. *Moore,* 312 F.3d at 327; *see also U.S. v. City of Chicago,* 567 F.2d 730, 733 (7th Cir. 1977) (City "is not required to maintain an eligibility list until all those listed on it have been appointed"); *Deveraux v. City of Chicago,* 14 F.3d 328, 331 (7th Cir. 1994) (City had right to retire list). Even if a person is *first* on a list, they have no guarantee of promotion. *Petru v. City of Berwyn,* 872 F.2d 1359 (7th Cir. 1989) (first applicant on list had no due process claim when city did not use list). The Eligibility List simply provides a pool of candidates to fill vacancies, if and when they arrive.

c.  **Plaintiff's ability to report misconduct belies any alleged due process violation**

Plaintiff claims defendants "failed to provide [him] with opportunity for a hearing and other procedural safeguards to contest the lack of integrity in the promotion examination." *Compl.* ¶104. However, Plaintiff has not alleged he notified the City of this 'lack of integrity,' nor has he alleged

---

#3765-3. It is also a public record on the City's website. A court may take notice of public records on a 12(b)(6) motion. *Ennenga v. Starns*, 677 F.3d 766, 776 (7th Cir. 2012) (court records); *Cause of Action v. CTA.*, 815 F.3d 267, 277 (7th Cir. 2016) (online records).
https://www.cityofchicago.org/content/dam/city/depts/dhr/supp_info/HRpolicies/
CPD_Hiring_Plan_with_apx.pdf (last checked 4/25/18).
[4]*Shakman* claims are also barred by *laches* past 180 days. *Smith v. City of Chicago,* 769 F.2d 408, 413 (7th Cir 1985)

any due process he would have received would remedy his complained-of conduct. Indeed, it is a mystery what process he envisions would cure his low ranking score on the 2015 Lt. Exam.

"The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). If Plaintiff believed City employees cheated on the 2015 Lt's Exam, he had avenues to report it, *i.e.,* an opportunity to be heard. For example, he could have reported it to CPD's Bureau of Internal Affairs, which internally investigates alleged misconduct. *See, e.g.,* Mun. Code Chi. § 2-84-330. Or, he could have reported it to the City's Office of the Inspector General ("OIG"), which investigates City waste, fraud and abuse. Mun. Code Chi. § 2-56-010, *et seq.* Plaintiff does not allege he made any such complaints, nor does he allege he could not do so.[5]

## II. PLAINTIFF HAS FAILED TO ALLEGE AN EQUAL PROTECTION CLAIM

There are two types of Equal Protection claims: "state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). Plaintiff has not alleged a "protected class," and "class of one" claims are barred in employment cases.

Plaintiff does not claim he was singled out based on any protected class, and being a victim of misconduct is not a protected "class." An identical argument was rejected in *Wilson*:

> "[T]he plaintiffs cannot adequately plead that they belong to any identifiable 'class of persons.' Rather the plaintiffs' class' is defined only in relation to the CPD's conduct – in other words, the plaintiffs are members of the 'class' of police officers with whom CPD did not share answers to the Test. Defining a class based on the plaintiff's status as victims of allegedly wrongful conduct is impermissible in the equal protection context."

*Wilson,* 2013 WL 4401364 at *1, n.2; *McDorman v. Smith,* 437 F.Supp.2d 768 (N.D. Ill. 2006).

---

[5] Indeed, after receiving a complaint about cheating on the 2015 Lt's exam, the OIG did investigate these allegations. The OIG's Advisory about this investigation is Exhibit 2. It is publicly available online, and this Court may take notice thereof. *Ennenga*, 677 F.3d at 776; *Ray*, 629 F.3d at 665; *Cause of Action*, 815 F.3d at 277. http://chicagoinspectorgeneral.org/wp-content/uploads/2017/06/CPD-2015-Lieutenants-Exam-Advisory.pdf (last visited 4/25/18).

Nor can Plaintiff proceed on a "class of one" theory. In a "class of one" claim, a plaintiff alleges the government acted arbitrarily *against* them out of some personal ill will. *Village of Willowbrook v. Olech,* 528 U.S. 562, 563-564 (2000) (animus after a prior lawsuit). Here, Plaintiff claims Defendants arbitrarily *favored* three persons due to personal relationships. Moreover, the Supreme Court has rejected "class of one" claims in the employment context. *Engquist v. Oregon Dep't of Agr.,* 553 U.S. 591, 605 (2008) ("the class of one theory of equal protection… is simply a poor fit in the public employment context.") Wary that "ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance,'" the Court barred such claims. *Id.* at 609. Plaintiff has no equal protection claim.

### III. THE STATUTE OF LIMITATIONS BARS PLAINTIFF'S § 1983 CLAIMS

Even if properly pled, Plaintiff's constitutional claims are time-barred. The statute of limitations for § 1983 suits is two years. *Liberty v. City of Chicago,* 860 F.3d 1017, 1019 (7th Cir. 2017). Plaintiff filed this lawsuit on January 8, 2018. *Dkt. #1.* However, this claim is about the 2015 Lt's Exam, and allegedly sharing answers to the test. The Complaint makes clear all the events at issue, up to and including the exam itself, occurred in 2015 or earlier. *See, e.g., Compl.* at ¶75.

The only allegation on or after January 8, 2016 is that the City "began using the results from the new examination" in 2016. *Compl.* at ¶91. However, the mere fact that the City is using the 2015 Eligibility List does not render allegations timely relating to cheating on the exam in 2015.

Where, as here, a plaintiff claims intentional violation of their rights, *see Iqbal,* 556 U.S. at 676 (equal protection requires discriminatory intent), the clock runs from the discriminatory act itself. A "new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from past discrimination." *Jackson v. City of Chicago,* 552 F.3d 619, 624 (7th Cir. 2009); *citing Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 618 (2007) (overruled by statute inapplicable here); *United Air Lines, Inc. v. Evans,* 431 U.S.

8

553 (1977). Nor can a Plaintiff sleep on an eligibility list because they think they may be called, only to sue after it is retired. *United States v. City of Chicago,* 796 F.2d 205, 209 (7th Cir. 1986).[6]

Plaintiff cannot evade the statute of limitations by alleging he "was initially unaware of the motivations for administering the new examination." *Compl.* ¶89. Defendants' alleged "motives" do not matter: what matters is if Plaintiff was aware of his alleged injury. *See, e.g., Stokes v. Norfolk S. Ry. Co.*, 99 F. Supp. 2d 966, 973 (N.D. Ind. 2000). Based on his allegations, there is no question he was. Plaintiff clearly was aware the 2007 Eligibility List had been retired, aware the 2015 Lt's Exam was administered, and aware of his new score and rank. His suggestion he only later learned the motives for the new exam were improper (omitting what he actually "learned," or when) is not sufficient.

## IV. THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED.

### a. Plaintiff has not alleged Johnson, Wysinger, and Williams were each personally involved in a constitutional deprivation

Governmental officials are only liable under § 1983 for their own acts. *Iqbal,* 556 U.S. at 676. "A damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation."*Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). To sue Johnson, Wysinger, and Williams, Plaintiff must allege each personally acted to deprive him of his rights.

With respect to Johnson and Wysinger, Plaintiff has alleged no involvement *at all.* He does not say either man had authority to retire the 2007 Eligibility list, or hold the 2015 Lt's Exam. Nor does he say they accessed or shared test information. *See Compl.* ¶78. While Plaintiff alleges they were aware of misconduct, "mere knowledge of and failure to act to remedy a constitutional violation is not actionable because there is no duty to do so." *Cole v. Bd. of Trustees of NIU.*, No. 13 C 3969, 2015 WL 13309240, at *9 (N.D. Ill. May 19, 2015). As Johnson and Wysinger are not alleged to have participated in a deprivation, no liability can flow from their inaction.

---

[6] This standard can be different in a disparate impact case – *e.g.,* where design and/or scoring of the exam unintentionally has a systemic impact against members of a protected class. This is not such a case.

Plaintiff does allege Williams "provided access to the examination materials." *Compl.* ¶78, But he does not suggest Williams had authority to schedule, administer, or score the 2015 Lt's Exam itself. Any such claims would fail.

### b. The Individual Defendants are entitled to qualified immunity

Qualified immunity shields officials from liability unless they violated a right clearly established at the time. *Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional principles beyond debate." *Id.* (quotes omitted). The right must be clear "not as a broad general proposition, but in a particularized sense so the contours of the right are clear to a reasonable official." *Id.* at 2094 (quotes omitted).

As an ability to be free from suit, qualified immunity should be resolved as early as possible. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009). Factual pleading standards, allowing gatekeeping of claims, "is especially important in suits where Government-official defendants are entitled to assert the defense of qualified immunity." *Iqbal,* 556 U.S. at 685. "Qualified immunity can be grounds for a Rule 12(b)(6) dismissal when the allegations of the complaint, taken as true, fail to allege the violation of a clearly established right." *McGreal v. AT&T*, 892 F.Supp.2d 996, 1012 (N.D. Ill. 2012).

As discussed in Sections I-II, Plaintiff does not have a protected due process interest in the 2015 Lt's Exam. *See, e.g., Moore,* 312 F.3d at 327; *United States,* 869 F.2d at 1037; *Bigby,* 766 F.2d at 1056-57; *Wilson,* 2013 WL 4401364 at *1. Similarly, it is far from "clearly established" that alleged personal favoritism towards a wife or girlfriend violates the equal protection clause. *Engquist,* 553 U.S. at 591; *Wilson,* 2013 WL 4401364 at *1, n.2. Therefore, qualified immunity protects the Individual Defendants.

        **c.      The individual defendants should be dismissed in their official capacities**

To the extent Plaintiff names the Individual Defendants in official capacities, this is redundant since the City is a defendant, and those claims should be dismissed. An official capacity suit is a suit against the municipality. *Sanville v. McCaughtry,* 266 F.3d 724, 732 (7th Cir. 2001).

**V.    PLAINTIFF HAS NOT PLED A *MONELL* CLAIM AGAINST THE CITY**

Plaintiff has failed to state a *Monell* claim against the City. A *Monell* claim requires "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Houskins*, 549 F.3d at 493. "Boilerplate allegations" are insufficient, and "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 479 (7th Cir. 1997). For a custom, Plaintiff also "must show that City policymakers were 'deliberately indifferent as to [their] known or obvious consequences.'" *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). Nor is it enough to allege that a policy or custom exists. "The complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). This means that a complaint must state "a direct causal link between a policy or custom of the [municipality] and the alleged constitutional violations." *Id.*

Plaintiff alleges the Individual Defendants were "policymakers" on promotions. This argument was defeated in *Auriemma v. Rice,* 957 F.2d 397, 399-401 (7th Cir. 1992), when the Seventh Circuit held that even the Superintendent [at the time, McCarthy] lacked such authority. The Court in *Auriemma* drew a contrast between authority to take final action in a given case, and authority to make "policy." *Id.* at 400. Even if the Superintendent can make a final employment decision (e.g., promotion), that does not make him a policymaker under Section 1983. *Id.* at 401. The City

11

Council's Municipal Code restricts his ability to operate. *Id.; citing* Mun.Code.Chi §2-84-040. Thus, the Superintendent is not a policymaker, for purposes of an allegation that he discriminated in an employment action. *Id.* at 401.

Plaintiff also fails to state facts alleging a City policy or widespread custom or practice, let alone one that was the "moving force" behind his discharge. A *Monell* claim must "plead factual content that allows the court to draw the reasonable inference" that the City had a policy, custom, or practice of discrimination. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Plaintiff only alleges three people cheated on an exam. Outside of that, he has provided absolutely no factual allegations supporting a policy. Quite the contrary, he admits there are various ordinances and rules regarding ethics and integrity, which he says the Individual Defendants evaded. *Compl.* ¶¶43-49. Accordingly, Plaintiff has not pled a policy or custom, as required under Section 1983.

## VI. PLAINTIFF HAS FAILED TO ALLEGE A BREACH OF CONTRACT CLAIM

### a. Plaintiff does not allege the Individual Defendants are party to any contract

Count II has no allegations against the Individual Defendants, and does not allege Johnson, Williams, or Wysinger were parties to any contract. Rather, he alleges the City made him an offer to apply for the '15 Lt's Exam and breached its contract with him. *Compl.* ¶¶ 107, 110. Alternatively, he says he is a third-party beneficiary of the City's contract with its vendors. *Compl.* ¶111. Since nothing alleges the Individual Defendants are parties to any contract, they should be dismissed.

### b. Plaintiff has failed to plead the elements of a contract with the City

There is no contract between the City and Plaintiff to take the Lieutenant's Exam. It is simply an opportunity that arose in the course of his continued employment with the City.

Plaintiff alleges "the City of Chicago made an offer to Plaintiff to apply for the Police Lieutenant examination." *Compl.* ¶*107*. He fails to specify the document to which he refers, or to attach it to his Complaint. *Compare to* 735 ILCS 5/2-606 (requiring contract be attached to state

court claim). To the extent Plaintiff refers to the Exam Announcement, the City attaches the "Job Announcement" which had been posted on the City's careers website as Exhibit 3.[7]

The Exam Announcement makes it clear that the City did not make an offer, let alone one with the representations Plaintiff suggests. The announcement says, in pertinent part:

- "paying the fee does not guarantee an offer of employment with the City of Chicago. This fee is required by the Municipal Code of Chicago 2-74-020."

- "NOTE: THIS EXAM ANNOUNCEMENT IS NOT AN OFFER OF PROMOTION, COMPLETION OF ANY STEP OR ALL STEPS IN THE POLICE LIEUTENANT EXAM PROCESS OR BEING PLACED ON THE ELIGIBILITY LIST DOES NOT GUARANTEE PROMOTION, OR OTHERWISE CREATE ANY RIGHT OR CLAIM TO PROMOTION."

- "NOTE: AT ANY TIME DURING THE HIRING PROCESS OR DURING THE LIFE OF THE PRE-QUALIFIED APPLICANT LIST, THE DEPARTMENT OF HUMAN RESOURCES AND THE CHICAGO POLICE DEPARTMENT RESERVE THE RIGHT TO MODIFY THE SELECTION PROCESS, THE TEST SCHEDULE, AND/OR IMPOSE ANY ADDITIONAL TESTS, STANDARDS, OR QUALIFICATIONS DEEMED APPROPRIATE TO EVALUATE APPLICANTS FOR THIS POSITION."

Exhibit 3 at 4-5. There is no offer here, let alone sweeping representations about exam integrity. There is no reference to a vendor that "would comply with the statutes, rules, plans and procedures governing the ethical and impartial examination based on merit." *Compl.* ¶108.

The above language also shows there is no consideration. Plaintiff claims he "performed his obligations under the contract by accepting the offer, completed the application, and paid the City of Chicago a fee." *Compl.* ¶109. But the money was a fee imposed by the municipal code. Mun. Code of Chi. § 2-74-020(b). Municipalities, especially home rule ones, may assign fees to defray its costs. *See, e.g., Concrete Contractors' Ass'n of Greater Chicago v. Village of La Grange Park,* 14 Ill.2d 65, 70 (1958); *Lake Forest Chateau, Inc. v. City of Lake Forest*, 133 Ill. 2d 129, 134 (1989). A municipality does not enter into an implied contract just by imposing a fee to defray the costs of its services. *Vill. of*

---

[7] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Ass. Ins. Cos*, 29 F.3d 1244, 1248 (7th Cir.1994).

*Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 500 (2001). Paying a fee to defray the City's expenses of providing a promotional exam is not the same as contractual consideration.

Plaintiff is apparently trying to back-door statutes, ordinances, and the Hiring Plan into a breach of contract claim, because he cannot state a claim under them. *Compl.* ¶108. But these laws and rules are not part of any contract. In Illinois, "[t]he presumption is that 'a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise.'" *Fumarolo v. Chicago Bd. Of Educ.,* 142 Ill.2d 54, 105 (1990). In particular, an ordinance which states goals or a "'general purpose,' and states nothing about specific employees['] rights" does not create contractual rights. *Unterschuetz v. City of Chicago,* 346 Ill.App.3d 65, 75 (1st Dist. 2004). "'The legislature must be free to exercise its constitutional authority without concern that each time a public policy is expressed contractual rights may thereby be created.*" Id.*

### c. Plaintiff was not an intended third party beneficiary

Finally, Plaintiff argues that "alternatively, Plaintiff is an intended third-party beneficiary of the contract between the City of Chicago and the independent vendor." *Compl.* ¶111. Illinois law strongly disfavors third-party beneficiary claims, and Plaintiff fails to meet this standard.

> In contract interpretation, however, there is a strong presumption that the contracting parties did not intend to confer benefits on non-contracting parties. Illinois law recognizes two types of third-party beneficiaries: intended and incidental. Only an intended third-party beneficiary may enforce rights under a contract. It is not enough that a third party will reap incidental benefits from the contract; the benefit must instead be intended. Intent to benefit a third party is to be determined from the contract provisions and from the circumstances attending the execution of the contract. So strong is the presumption against third-party-beneficiary status that an intent to benefit a third party must have practically an express declaration. The plaintiff bears the burden of showing her status as a third-party beneficiary.

*Salvi v. Vill. of Lake Zurich*, 66 N.E.3d 894, 911–12 (Ill. App. Ct. 2016) (internal cites omitted); *see also Quinn v. McGraw-Hill Cos., Inc.*, 168 F.3d 331, 334 (7th Cir. 1999) (applying IL law).

Plaintiff does not claim the contract between the City and an unidentified vendor contains "express language identifying" applicants as third party beneficiaries. *Quinn,* 168 F.3d at 334. Nor

14

does he suggest there is an implication "so strong as to be practically an express declaration." *Id.*. Rather, Plaintiff claims this unidentified contract "on information and belief, prohibits the sharing of test or answers, prior to its administration, with any applicants." *Compl.* ¶112. Even if so, such a provision would not make applicants an "intended beneficiary." At most it suggests the contract codifies an interest in exam integrity, which is an interest of the City itself. *Compl.* ¶113. Plaintiff claims this provision "directly benefitted [him] as an applicant," *Compl.* ¶114, but whether someone "benefits" is not the test. "[T]he benefit must instead be intended," and so clearly as to be "practically an express declaration." *Salvi,* 66 N.E.3d at 912.

Similarly, the Seventh Circuit recently held, under Illinois law, that a bank could not rely on provisions about data security in a contract between a merchant and a customer to claim third-party beneficiary status after the merchant was hacked. *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 2018 WL 1737126 at *12 (7th Cir. Apr. 11, 2018). The bank was simply an incidental beneficiary in the data security provisions. *Id.* Plaintiff is not an "intended beneficiary" as required under Illinois law.

## CONCLUSION

For the reasons stated above, the Defendants request Plaintiff's Complaint be dismissed with prejudice, and for any other relief this Court deems appropriate.

Dated: April 27, 2018                                      Respectfully submitted,

                                                           EDWARD N. SISKEL
                                                           Corporation Counsel of the City of Chicago

30 N. La Salle St., Suite 1020                        By:  */s/ Daniel W. Myerson*
Chicago, Illinois 60602                                    DANIEL W. MYERSON
(312) 744-4939/5453                                        Assistant Corporation Counsel
                                                           MELANIE PATRICK NEELY
                                                           Assistant Corporation Counsel Supervisor