CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 19-1320

HOSEA WORD,

           *Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, *et al.*,

           *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-00141 — **Sharon Johnson Coleman**, *Judge*.

_____

ARGUED DECEMBER 4, 2019 — DECIDED JANUARY 6, 2020

_____

Before FLAUM, RIPPLE, and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge*. Plaintiff Hosea Word is a sergeant and aspiring lieutenant in the Chicago Police Department (CPD). Having just missed out on a promotion following the 2006 lieutenants' examination, Word missed the cut again after receiving a lower-ranking score on the 2015 examination. Word alleges that high-ranking members of CPD leadership connived to sneak early test content to their "wives and paramours" prior to the 2015 exam, resulting in those romantic

partners acing the test and receiving promotions. The district court dismissed Word's constitutional due process and equal protection claims, as well as his breach of contract claims. Illinois and federal caselaw squarely preclude Word's case. We affirm.

## I. Background

From time to time, the CPD administered an examination for those sergeants seeking promotion to lieutenant. While the CPD retained discretion over whom to promote, those who scored highest on the exam were generally first in line.

Word has served with the CPD since 2001. When he took the departmental lieutenants' exam in 2006, he was ranked 150th of all candidates. The sergeants ranked 1 through 149 all received promotions; Word was the highest-scoring sergeant who did not. In 2015, when Word next took the exam, his ranking fell to 280th. He was passed over a second time.

The three individual defendants served as senior members of CPD leadership: former Superintendent Eddie Johnson, former First Deputy Superintendent Al Wysinger, and former Chief for Bureau of Organizational Development Eugene Williams. According to Word, each of these men's "wives or paramours" were CPD sergeants who took the 2015 exam and then received promotions. Word alleges that defendant Williams had early access to the exam and provided test content to the wives and paramours, who formed a clandestine "study group" and cheated their way to passing scores. For example, Word claims that Wysinger's wife (who, like the other women, is not named as a defendant in the complaint) went from ranking 280th in the 2006 exam results to first in the 2015 results.

No. 19-1320                                                3

Word filed his complaint in early 2018, suing the City of Chicago, Johnson, Williams, and Wysinger. He alleged two counts: (1) violations of equal protection and due process under 42 U.S.C. § 1983; and (2) breach of contract. Defendants moved to dismiss all counts and the district court granted their motion in January 2019. Word timely appealed.

## II. Discussion

"We review de novo a district court's grant of a motion to dismiss for failure to state a claim, accepting all well-pleaded facts in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1025 (7th Cir. 2018) (citation omitted). Word appeals the dismissal of each of his claims and offers multiple rationales for reversing the district court. He argues that he had a constitutionally protected property interest in a fair lieutenants' examination; that he established an equal protection claim because he was irrationally treated differently than the "wives and paramours" (and further sufficiently alleged *Monell* liability); and that he has cognizable breach of contract claims based on (1) a "contract" created by his "accepting the city's offer" of a fair examination and (2) purported third-party beneficiary status in a contract between the City and the exam administrator. None of his arguments are persuasive.

### A.  Due Process

According to Word, he and other legitimate test-takers had a constitutionally protected property interest in a fair lieutenants' examination "free of cheating and rigging." Word grounds this claim in the Illinois Municipal Code's lan-

guage that "[n]o person or officer shall … wilfully or corruptly furnish to any person any special or secret information for the purpose of either improving or injuring the prospects or chances of any person so examined, or to be examined, being appointed, employed or promoted." 65 Ill. Comp. Stat. § 5/10-1-26. Word contends this statute "creates a protectable property interest in fair civil service examinations, and specifically prohibits the cheating that transpired here."

Word does not cite any authority holding that a statute, by merely forbidding an act, creates a property interest in the act not occurring. The cases on which he relies are inapt. In *Mueller v. Bd. of Fire & Police Comm'rs of the Vill. of Lake Zurich*, the Illinois Appellate Court held that a village's process for hiring paramedics was subject to state judicial review under Illinois's Administrative Review Law. 643 N.E.2d 255, 262 (Ill. App. Ct. 1994). Per Word, *Mueller* shows that "Illinois law recognizes that the integrity of the promotional process is itself protected." But *Mueller* does not hold that there is a property interest in any municipal promotional process; indeed, the word "property" appears nowhere in the decision, and property as a concept formed no basis for its conclusions.

Likewise, Word's reference to *Peoria Police Sergeants v. City of Peoria Bd. of Fire & Police Comm'rs*, 574 N.E.2d 1240 (Ill. App. Ct. 1991), is not relevant. There, the Illinois Appellate Court held that a city's promotional procedure violated 65 Ill. Comp. Stat. § 5/10-2.1-15, which required police and fire boards to "provide for promotion in the fire and police departments on the basis of ascertained merit and seniority in service and examination." *Id.* at 1241, 1243. *Peoria* says nothing about a constitutionally protected property interest.

Word argues that cases and statutes need not "contain language explicitly declaring" a property interest exists but has not shown why we should find a property interest here. No court has ever cited *Peoria* or *Mueller* to suggest they created or described a property interest, for the simple reason that neither does so. It takes little imagination to foresee the chaos that would result if we began to recognize every act forbidden by law as implying a mirror-image property right to the act's non-existence.

We need not engage in such conjecture, as we already have determined that there are no protected property interests in either promotion within the police department or a fair examination for such preferment. In *Bigby v. City of Chicago*, a group of police sergeants challenged an earlier version of the lieutenants' examination as arbitrary and capricious, and thus violative of due process. 766 F.2d 1053, 1055 (7th Cir. 1985). We held that while a police officer had a property interest in retaining his job, he had no such interest in an unattained higher rank. *Id.* at 1056. Concomitant with this conclusion, we also ruled that there is no constitutionally protected property interest in a fair examination for promotion. "It is true that state law requires promotions of government employees, including policemen, to be 'on the basis of ascertained merit and seniority in service and examination.'" *Id.* (quoting 65 Ill. Comp. Stat. § 5/10-2.1-15). "The statute and ordinance create an expectation that the examinations used for promotions in the civil service will be fair but, as the Illinois courts have held, not so firm and definite an expectation as to be 'property' in a constitutional sense." *Id.*[1]

---

[1] This holding is consistent with those of our sister circuits. *See, e.g.*, *McMenemy v. City of Rochester*, 241 F.3d 279, 287 (2d Cir. 2001) ("Although

Word tries to distinguish himself from the sergeants in *Bigby* on the ground that he does not claim to possess a property interest in the promotion or lieutenant's rank, but in a fair examination for the rank. But as just described, we already rejected that distinction: "[I]t is not the examination that the applicant is interested in—no one likes taking tests—but the job." *Id.* Word insists that the relevant language in *Bigby* is mere dicta, or otherwise should be repudiated today, but offers no compelling arguments for doing so. As we and other courts have held, state law does not provide a property interest in state promotional procedures.

### B. Equal Protection

Word also claims that the defendants' actions violated his equal protection rights and that the City is liable under *Monell v. Dep't of Soc. Servs. of the City of New York*, 426 U.S. 658 (1978). He raises two bases for his equal protection claim: (1) he and other legitimate test-takers were singled out "for arbitrary and irrational treatment" because they were not romantically entwined with CPD leadership; and (2) he is a member of a protected gender class, "as opposed to the wives and paramours." Neither argument convinces, and because Word has failed to establish an underlying constitutional violation, the

---

New York State law clearly requires a 'competitive' examination, the law does not create a cognizable *property interest* in a competitive examination. An examination is not an end in itself; it has value only because it may lead to something valuable."); *Teigen v. Renfrow*, 511 F.3d 1072, 1080–81 (10th Cir. 2007) ("The subtle distinction between the right to be selected for promotion and the right to take part in the promotion process is insufficient to salvage Plaintiffs' due process claims. … [I]t is well established that an entitlement to nothing but procedure cannot be the basis for a property interest.") (citation omitted).

No. 19-1320 7

district court appropriately dismissed his *Monell* claim. *See King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights.").

### 1. Arbitrary and Irrational Treatment

Word argues that the Equal Protection Clause protects individuals against arbitrary and irrational treatment by state action, even if such action is not taken due to a plaintiff's membership in any particular class. In other words, Word maintains he has a "class of one" equal protection claim against the defendants. "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).[2]

Word asserts that there is no "class of one" bar against equal protection claims. We do not dispute that such claims may be viable under certain circumstances. But Word has failed to address defendants' argument that class of one equal protection claims are barred in the public employment context. Word's claim runs headlong into *Engquist v. Or. Dep't of Agric.*, in which the Supreme Court held that

---

[2] The "class of one" language may be slightly misleading; it describes a type of a claim rather than a numerical limitation. *See Olech*, 528 U.S. at 564 n.* ("Whether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis.").

> [t]he question in this case is whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class. We hold that such a "class-of-one" theory of equal protection has no place in the public employment context.

553 U.S. 591, 594 (2008). Word has not provided any argument against the application of *Engquist*. Furthermore, his citation to *Esmail v. Macrane* is misplaced, as that case addressed a liquor store owner's dispute with a mayor, having nothing to do with public employment. 53 F.3d 176, 177–78 (7th Cir. 1995).[3]

### 2. Protected Gender Class

Word makes the cursory point that he "is in a protected gender class, as opposed to the wives and paramours." Word arguably forfeited this claim by failing to develop it; but even if we were to consider it, it would fail. In a protected-class equal protection analysis, a plaintiff must show that "defendants acted with a nefarious discriminatory purpose and dis-

---

[3] We do wish to correct one statement in the district court's opinion, which cited *Moore v. Muncie Police & Fire Merit Comm'n*, 312 F.3d 322, 326 (7th Cir. 2002), for the proposition that "Word must establish that the defendants deprived him of a protected property interest" under either a due process or equal protection claim. But *Moore* only addresses due process, not equal protection claims; equal protection claims do not require showing deprivation of a property interest.

criminated against him based on his membership in a definable class." *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (internal citation omitted).

Word tries to claim gender discrimination, but his theory does not add up to gender discrimination. He claims he was discriminated against because he was not in a romantic relationship with a CPD executive. Such an allegation does not suffice to state an equal protection claim:

> A male executive's romantically motivated favoritism toward a female subordinate is not sex discrimination even when it disadvantages a male competitor of the woman. Such favoritism is not based on a belief that women are better workers, or otherwise deserve to be treated better, than men; indeed, it is entirely consistent with the opposite opinion. The effect on the composition of the workplace is likely to be nil, especially since the disadvantaged competitor is as likely to be another woman as a man … . Neither in purpose nor in consequence can favoritism resulting from a personal relationship be equated to sex discrimination.

*Preston v. Wis. Health Fund*, 397 F.3d 539, 541 (7th Cir. 2005).[4] Word makes precisely this claim, and therefore we must affirm its dismissal.

---

[4] *Preston* concerns a Title VII claim, but its logic applies with equal force here. "Our cases make clear that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection." *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003) (citations omitted).

### C. Breach of Contract

Word states that he sufficiently alleged breach of contract claims for two reasons: (1) he and the City had a contract for the fair administration of a lieutenants' examination; and (2) he is a third-party beneficiary of the contract between the City and the exam's administrator. Both fall short of the mark.

#### 1. Direct Breach

Word's complaint alleges that "the City offered Sergeant Word a fairly administered lieutenant's examination free of cheating" and that "Word accepted the City's offer by registering, paying money, studying, and sitting" for the exam. But as in the district court, Word cannot identify any actual offer.

"The test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1229 (7th Cir. 1995) (citing *McCarty v. Verson Allsteel Press Co.*, 411 N.E.2d 936, 943 (Ill. Ct. App. 1980)). Word has not identified any statement, oral or written, that constitutes a contractual offer. He has merely alleged the legal conclusion that there was a contract.

The only statement of the defendants identified in the briefing is the announcement of the examination, which explicitly states that it is not "an offer of promotion." Word again tries to distinguish his right to promotion and to a fair examination, but even if we were to accept such a dichotomy, the announcement still would contain no language which would "induce[] a reasonable belief in" Word that he could bind the City by acceptance. *Id*.

### 2. *Third-Party Beneficiary*

Finally, Word posits that he can bring a breach-of-contract claim as the third-party beneficiary of a contract between the City and its examination administrator. In Word's view, the City and the administrator had contracts that prohibited cheating and contained confidentiality requirements, and considering the totality of the circumstances, these contracts are clearly meant to benefit good-faith test-takers like Word.

Illinois law, however, strongly disfavors finding that a third-party beneficiary relationship exists absent express language creating one. *See Martis v. Grinnell Mut. Reins. Co.*, 905 N.E.2d 920, 924 (Ill. Ct. App. 2009) ("There is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties."). As the *Martis* court explained, "[a]n individual not a party to a contract may only enforce the contract's rights when the contract's original parties intentionally entered into the contract for the direct benefit of the individual." *Id.*

Word suggests that the City knew it would only have an applicant pool for the exam if aspiring sergeants knew the exam would be fair and no cheating would occur. Therefore, the City's contract with the administrator effectively treated the applicant pool as third-party beneficiaries. This is not sufficient, however, to demonstrate the existence of third-party beneficiaries under Illinois law. "That the contracting parties know, expect, or even intend that others will benefit from their agreement is not enough to overcome the presumption that the contract was intended for the direct benefit of the parties." *Id.* (citation omitted); *see also Bank of Am. N.A. v. Bassman FBT, LLC*, 981 N.E.2d 1, 11 (Ill. App. Ct. 2012) ("A strong presumption exists that parties intend a contract to apply solely

to themselves."). Word simply has not plausibly alleged that the city and exam administrator intended to confer legally enforceable rights on the test takers.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.